## COMMONWEALTH *vs.* EAGLE FIRE INSURANCE COMPANY.

If receivers are appointed to close up the concerns of an insurance corporation, and the corporation is enjoined from doing further business, except to choose officers and do other acts necessary to continue its corporate existence, and to lay such assessments as may be necessary to pay its liabilities, the president will be entitled to receive from that time forth only so much as his services are reasonably worth; although by vote of the corporation he was to receive a fixed sum as an annual salary.

If two receivers are appointed to close up the concerns of a corporation, and one of them misappropriates the funds by using them for his own profit, and the other is guilty of gross neglect of his duties, giving no attention to the matters intrusted to his care and supervision, they will be jointly liable for the balance found justly due upon stating their account, and will be chargeable with interest.

PETITION by the insurance commissioners of the Commonwealth, alleging that they were of opinion that the condition of the Eagle Fire Insurance Company was such as to render its further proceedings hazardous to the public and to those holding its policies, and praying for an injunction to restrain the company from proceeding further with its business.

Upon this petition an injunction was granted, and on April 1, 1862, Joshua Webster and Isaac S. Morse were appointed receivers of the property and effects of the company, and it was ordered that the injunction " be so far modified that said corporation be authorized and empowered to choose officers, and to do all necessary acts to continue its corporate existence until the concerns thereof shall be fully and finally closed as aforesaid; and also to lay all such assessments, according to the provisions of law, as may be necessary to pay the liabilities of said company; which said assessments are to be collected and received by the said receivers; and in all other respects said injunction is to continue."

Joshua Webster was the president of the company, having been elected by the directors shortly before the filing of this petition. At the same meeting of the directors at which he was elected, January 29, 1862, it was voted " that for the present, or until the success of the company is firmly established, the salary for president be $1000 per annum."

The receivers presented their final account for allowance October 29, 1864, and in accordance with the provisions of *St.* 1864, *c.* 308, § 3, it was referred to the insurance commissioners for examination and that they might report thereon.  Upon the filing of the report of the insurance commissioners, which stated that the account should not be allowed, and alleged against the receivers charges of fraud, misappropriation and neglect, the receivers were directed to appear and show cause why they should not be removed from office and ordered to pay into court the moneys collected by them.  On April 5, 1865, they resigned their trust, and their resignation was accepted, and a new receiver was appointed.  A special master in chancery was also appointed, who was directed to examine the accounts of Webster and Morse as receivers and to report thereon to the court, and to report to the court the evidence relating to their claim for compensation for services.  It appeared from the report of the master, with other facts, the material portion of which is set forth in the findings of the court thereon, that Mr. Webster appropriated from the funds collected by him as receiver the sum of $2583.33 in payment for his services as president of the company from April 1, 1862, to November 1, 1864, at the rate of $1000 per annum; that he testified that his duties as president after April 1, 1862, the date of his appointment as receiver " were formal, and if he had them all at once, would have taken much less time than three days ; " and that " it was further testified by Mr. Webster that he deposited all the moneys collected by the receivers to his private account in bank ; that he mingled these moneys with his own ; that he bought government securities with the common fund; that he let the money to individuals, and let considerable sums to James F. Eaton, his son-in-law, who bought the creditors' claims, and to the firm of which said Eaton was a partner; that he made profits and received interest on this fund, and passed the same to his private account. . . . As he kept no regular accounts, he testifies that he cannot state the amount of such profits and gains. . . . . Mr. Webster testified that he was not aware that there was any law regulating the subject of depositing trust funds; that he had been

assignee several times, and had been interested in insolvent estates, and had never known the fund to be kept separate from the merchant's own money."

The report was considered by the full court, and findings of the court as follows were subsequently filed:

" It appears from the master's report,

"1. That Joshua Webster, one of the receivers, has abused his trust by using the trust funds in his hands for his own profit; by procuring the assignment of claims due from the company to be made to his son-in-law for his private gain; by making false entries in his accounts of moneys paid; and generally, by a mode of conducting the business intrusted to him, which was inconsistent with the faithful discharge of his duty in the office of receiver. The said Joshua Webster should, therefore, be allowed nothing for his services as receiver.

"2. The claim of said Webster for compensation, as president of said company during the time the affairs of the corporation have been in charge of the receivers, is clearly exorbitant, and is to be disallowed. The master is to allow such sum for these services as he may think reasonable and proper.

"3. Isaac S. Morse has been guilty of gross neglect of his duties as receiver, giving no attention to the interests intrusted to his care and supervision; and although it does not appear that he intentionally committed any breach of trust, yet it is apparent that he is entitled to no compensation as receiver, because his services in that capacity have been of no value. His claim for those services is therefore to be disallowed.

"4. For such professional services, as attorney and counsellor, as have been rendered by Mr. Morse, or by his law firm, he is entitled to a reasonable compensation, which is to be ascertained and found by the master.

"5. The receivers' account, the report of the insurance commissioners, and the report of the master, are to be recommitted to the master. He is to reform and re-state said account in conformity to the above directions; to ascertain and report the sum which will be due from each of said receivers to said corporation on such re-statement of their account; and also to

ascertain and report the dividend which will be due to the creditors of the corporation on their claims, respectively, after the account shall have been re-stated and reformed, and after deducting his own charges, those of the counsel who appeared to represent said creditors at the previous hearings before him, and the costs of court."

A further hearing was then had before the master. The material portion of the master's second report is as follows : " The said Webster again claimed to be allowed for his services, as president, the exact amount stated in his account ; and he rested this claim on the ground that it was a compensation fixed by express contract, made by vote of the corporation ; that the corporation was still in existence by virtue of the decree of this court, which was referred to ; and that its effects in the hands of its receivers were liable for the amount due under its contract. But I refused to consider this claim, the court having decreed that the same is ' clearly exorbitant, and is to be disallowed.' I fix the reasonable and proper sum for his services as president at fifty dollars." The master also fixed a sum, to which no objection was made, for compensation to Mr. Morse and his law firm for their professional services, and re-stated the account of the receivers, submitting a new account in which the receivers were charged jointly with the balance found to be due from them. The master also reported an exhibit showing the sum which he found to be due from each of the receivers severally, and another exhibit showing the dividend which would be due to the creditors on their respective claims. No interest was charged to the receivers by the master.

The case was reserved by *Chapman*, J., for the determination of the whole court.

*J. C. Davis*, for the creditors of the corporation. Webster should not be allowed for his services as president more than the sum fixed by the master. *Jones* v. *Judd*, 4 Comst. 412. *Wellington* v. *West Boylston*, 4 Pick. 101. *Wolfe* v. *Howes*, 24 Barb. 174. *McDonald* v. *Montague*, 30 Verm. 357. *Ryan* v. *Dayton*, 25 Conn. 188. *Whitfield* v. *Zellnor*, 24 Mississippi, 663. The receivers should be charged jointly and not severally. *Trustees*,

*&c., in Pultney* v. *Stewart*, 27 Barb. 553. *Brinckerhoff* v. *Wemple*, 1 Wend. 474. *Monell* v. *Monell*, 5 Johns. Ch. 283. They should be charged with interest upon the balance found to be due from them, at least from October 29, 1864, the date of the filing of their final account. *Bentley* v. *Shreve*, 2 Maryland Ch. 215. *Robinson* v. *Robinson*, 1 DeG., Macn. & Gord. 256, 257.

*J. G. Abbott & C. A. Phillips*, for the receivers. Webster had been elected president, and had not resigned or been removed. The corporation was not dissolved, and the court directed that its organization should be kept up. No other president having been elected, he still continued in office, and he performed all the duties of the office, so far as they could be performed. The corporation cannot be absolved from its contract to pay for his services at the rate of $1000 per year. The receivers are not chargeable with interest. They differ from guardians, &c., who are required to invest the trust fund. *Wyman* v. *Hubbard*, 13 Mass. 232. *Stearns* v. *Brown*, 1 Pick. 530. *Boynton* v. *Dyer*, 18 Pick. 1. The rule to charge interest to trustees is based on their obligation to invest the trust fund, which obligation is not imposed on receivers. Hill on Trustees, 374. The exhibit in which the receivers are charged severally is in accordance with the former order of the court in this case.

CHAPMAN, J. 1. The president of the company did not render all the services for which his salary was to be paid, the exercise of his office having been suspended by legal authority. The salary was therefore properly apportioned by the master.

2. Interest is properly chargeable on the balance, because the money was illegally appropriated, and both receivers were responsible. One of them made the appropriation, and the other negligently permitted it.

3. They are jointly liable, because both are responsible for the improper appropriation of the funds.

> *Report of master confirmed; interest to be charged on the balance due from the receivers from the time of rendering their account; the receivers to be charged jointly.*